IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIANNE FELLMAN,

    Petitioner,

v.

DAWN DAVISON,

    Respondent.

No. C 10-01101 CRB

**ORDER GRANTING MOTION TO DISMISS**

Petitioner Dianne Fellman has filed a third petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging her California state conviction of first-degree murder. Respondent moves to dismiss the petition as "second or successive" under 28 U.S.C. § 2244. Having considered the record and the relevant legal authority, the Court hereby GRANTS Respondent's motion.

**I.  BACKGROUND**

On August 13, 1984, the Superior Court for the County of Santa Clara convicted Petitioner Dianne Fellman of first-degree murder and sentenced her to 25 years to life, plus a two-year enhancement for gun use. Pet. (dkt. 1) at 10. Fellman unsuccessfully appealed her conviction to the California Court of Appeal. Id.

On June 28, 1993, the District Court for the Northern District of California[1] denied Fellman's first federal habeas petition. See Fellman v. Poole, No. 90-20007, 1993 WL

---

[1] Judge Ware considered this petition.

1  248693, at *8 (N.D. Cal. June 28, 1993). On May 12, 1997, the Northern District[2] denied
2  Fellman's second federal habeas petition as second or successive, dismissing it "without
3  prejudice to Fellman filing a petition in this court if she obtains the necessary order from the
4  Court of Appeals for the Ninth Circuit." Fellman v. Poole, 1997 WL 257509, at *1 (N.D.
5  Cal. May 12, 1997)).[3]

6  On February 25, 2010, Fellman filed the instant petition in the Central District of
7  California, see Pet. (dkt. 1) at 1, which was subsequently transferred to this Court on March
8  8, 2010, Transfer Order (dkt. 6) at 1-2. Fellman now challenges her incarceration based on a
9  recent statement by Rebecca White, a "jailhouse informant" who testified against Fellman at
10 her initial trial, that "she had given false testimony in a murder trial that had resulted in a
11 woman receiving a life sentence." Pet. (dkt. 1) at 11. White later executed a declaration
12 stating that she testified against Fellman because the prosecutor at Fellman's trial, Richard
13 Gardner, flew White to the trial, threatened her, "[broke her] down to an emotional state
14 where she would do whatever he asked of her," and promised her "easier time." Id. at 13-14.
15 Fellman now seeks habeas relief based on these newly discovered facts and the prosecutorial
16 misconduct they suggest. Id. at 37.

## II.   DISCUSSION

18 The Antiterrorism and Effective Death Penalty Act (AEDPA) bars the district courts
19 from hearing "second or successive" petitions for a writ of habeas corpus without prior
20 approval from the appropriate court of appeals. 28 U.S.C. § 2244(b)(1) and (b)(3)(A).
21 Fellman has not obtained such approval. She argues, however, that (A) this Court's
22 dismissal of her second habeas petition without prejudice entitles her to a successive petition
23 without approval from the Court of Appeals for the Ninth Circuit, and (B) the Court of

---

[2] Judge Patel considered this petition.

[3] On August 17, 2007, Fellman filed a petition in the District Court for the Central District of California challenging a denial of parole, which petition the court adjudicated on the merits and dismissed. See Fellman v. Davison, 2010 WL 4241574, at *13 (C.D. Cal. Aug. 24, 2010) (recommendation of Maj. J. adopted by the court on October 20, 2010). The 2007 petition pertained to the execution of Fellman's sentence – unlike Fellman's first two petitions and the instant petition, which pertain to Fellman's conviction. As to the present question, then, the instant petition is Fellman's third.

2

1 Appeal's recent decision in United States v. Lopez, 577 F.3d 1053 (9th Cir. 2009), creates an
2 exception to AEDPA's gatekeeping requirements for habeas petitions that raise material
3 Brady claims. The Court rejects both arguments: the dismissal of Fellman's second petition
4 as second or successive without prejudice to seek Ninth Circuit approval does not entitle her
5 to a later petition without such approval, and Lopez does not create authority for the Court to
6 except Brady claims, however suggestive its dicta may be. Even assuming *arguendo* that
7 Lopez does create such an exception, Fellman's claim fails to raise a material Brady claim.

**A.  The dismissal of Fellman's second habeas petition without prejudice does not entitle her to file a successive petititon**

Fellman argues that "because as a matter of law, since the 1997 [second] petition was dismissed without prejudice, it is not considered 'successive' and permission from the 9th Circuit Court of Appeal is not required . . . ." Opp'n (dkt. 15) at 2 (citing Slack v. McDaniel, 529 U.S. 473 (2000); High v. Ignacio, 408 F.3d 585 (9th Cir. 2005)).

High, to which Fellman cites in support of her argument, allowed an unapproved, successive habeas petition following an earlier dismissal without prejudice. 408 F.3d at 589. The court, however, dismissed High's preceding petition "due to [High's] voluntary dismissal [of the petition] and his failure to exhaust state remedies." Id. at 589 n.4. Likewise, Slack's exception to Section 2244 pertains only to petitions originally dismissed without prejudice for failure to exhaust state remedies. See 529 U.S. at 486-87. Additional Ninth Circuit precedent supports the conclusion that this exception (for successive petitions dismissed previously without prejudice) extends only to habeas petitions dismissed for failure to exhaust state remedies[4] or for technical or procedural reasons[5] that similarly limit a petition from receiving initial adjudication on the merits.

---

[4] See, e.g., Anthony v. Cambra, 236 F.3d 568, 572 (9th Cir. 2000) (providing an exception for second-in-time petitions following dismissal for failure to exhaust state remedies); In re Turner, 101 F.3d 1323, 1323 (9th Cir. 1996) (same).

[5] See, e.g., Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1169 (9th Cir. 2003) (allowing a second-in-time petition where it effectively re-filed a claim presented in an earlier, unadjudicated petition); Hill v. Alaska, 297 F.3d 895, 899 (9th Cir. 2002) (allowing a second-in-time-petition challenging a parole decision when the first petition challenged the sentence itself).

3

1  The Northern District dismissed Fellman's first petition with prejudice. See Fellman v. Poole, 1993 WL 248693, at *8. It dismissed Fellman's second petition "without prejudice to Fellman filing a petition in this court if she obtains the necessary order from the Court of Appeals for the Ninth Circuit." Fellman v. Poole, 1997 WL 257509, at *1. Fellman's instant petition does not, then, satisfy the requirements of a without-prejudice exception, because the court adjudicated her original petition on the merits and dismissed it on substantive, not procedural, grounds.[6] This conclusion comports with the principle animating Slack and other cases that consider habeas exceptions. See, e.g., Rose v. Lundy, 455 U.S. 509, 522 (1982) (concluding that dismissal of habeas petition "[would] not unreasonably impair the prisoner's right to relief"); Slack, 529 U.S. at 489 (citing Rose, justifying Section 2244 without-prejudice exception by emphasizing that petitioner's claim did not originally receive "adjudication on the merits"). The Northern District fully adjudicated Fellman's original petition on the merits. Applying settled case law on the without-prejudice exception does not deny Fellman of a right to relief otherwise provided by law.

Accordingly, the Court rejects this argument.

**B.  Lopez does not create a Section 2244 exception for Brady claims**

Fellman further argues that, following the Court of Appeals' recent decision in United States v. Lopez, 577 F.3d 1053 (9th Cir. 2009), the Ninth Circuit recognizes an exception from Section 2244's gatekeeping requirements for petitions that present material evidence under Brady v. Maryland, 373 U.S. 83 (1963). See Opp'n (dkt. 15) at 2-3. Lopez considered (and ultimately dismissed) a second-in-time habeas petition that purported to raise a Brady claim. 577 F.3d at 1055. In doing so, the court contemplated in dicta whether or not AEDPA[7] categorically bars second or successive Brady claims. Id. at 1059-68.

---

[6] It would also be incongruous for the Court to allow a third, successive petition on this basis – following the petition's original dismissal <u>with</u> prejudice – when the court dismissed Fellman's second petition as second or successive, without prejudice specifically to seek Ninth Circuit approval of another petition.

[7] Fellman's petition concerns Section 2244 of AEDPA (governing state convictions). The Lopez petition rests on Section 2255 (governing federal convictions). Lopez, however, calls the requirements under Section 2244 "virtually identical" to Section 2255. 577 F.3d at 1061, n.6; see also United States

4

At the heart of the court's analysis was its concern with the "perverse result" created by a blanket prohibition on second or successive petitions purporting to raise new <u>Brady</u> claims – namely, the exclusion of material <u>Brady</u> claims, unavailable at a petitioner's first petition, that "establish[] a <u>reasonable probability</u> of a different result" but do not meet AEDPA's stricter "<u>clear and convincing eviden[tiary]</u>" standard. <u>Id.</u> at 1064-65 (emphasis in original). The court asked whether it should read AEDPA to create this result, but it did not answer the question. It concluded instead that the claim before it "[fell] into the category of nonmaterial <u>Brady</u> claims," which AEDPA does not except.[8] <u>Id.</u> at 1066-67. The court thus "[held] that <u>Brady</u> claims are not categorically exempt from AEDPA's gatekeeping provisions and that second-in-time <u>Brady</u> claims that do not establish materiality of the suppressed evidence are subject to dismissal under [AEDPA]." <u>Id.</u> at 1066. The court stated explicitly, however, that it "nee[ded] not, and [did] not, resolve the more difficult question whether <u>all</u> second-in-time <u>Brady</u> claims must satisfy AEDPA's gatekeeping requirements." <u>Id.</u> at 1067 (emphasis in original).

Fellman asks this Court to read <u>Lopez</u> liberally as providing for all material <u>Brady</u> claims an exception to Section 2244's rule against successive petitions. Opp'n (Dkt. 15) at 3. In light of the <u>Lopez</u> court's explicit refusal to provide such an exception, however, this Court finds that no such exception exists into which to fit Fellman's claim.[9] The <u>Lopez</u>

---

v. Buenrostro, 638 F.3d 720, 725-26 (9th Cir. 2011) ("assum[ing], without deciding, that the [Supreme] Court's interpretation of 'second or successive' for purposes of § 2244(b)(2) applies to § 2255(h)"). The Court treats the sections identically here as well.

[8] Recognizing that AEDPA "nowhere defines the term 'second or successive,'" <u>id.</u> at 1059, the court drew on the abuse-of-writ doctrine, which governed second-in-time petitions prior to AEDPA's enactment, <u>id.</u> at 1060-61 (AEDPA "codif[ied] the judicially established principles reflected in the abuse-of-writ doctrine and further restrict[ed] the availability of relief to habeas petitioners."). The court concluded that, under the abuse-of-writ doctrine, "federal habeas courts could reach the merits of <u>Brady</u> claims in second-in-time petititons only if the evidence was material under <u>Brady</u>." <u>Id.</u> at 1060. Thus the abuse-of-writ doctrine barred nonmaterial <u>Brady</u> claims, which principle AEDPA codified.

[9] Subsequent Ninth Circuit case law lends support to this conclusion. The Ninth Circuit in <u>Buenrostro</u> rejected a petitioner's reliance on <u>Lopez</u>. <u>Buenrostro</u>, 638 F.3d at 725-26. The court dismissed a second-in-time petition based on ineffective assistance of counsel, finding that "the words of § 2255(h) [the AEDPA provision analyzed under <u>Lopez</u>] indicate Congress' clear intent to prohibit us from certifying second-in-time claims, ripe at the time of a prisoner's first § 2255 proceeding but not discovered until afterward, unless such claims" meet AEDPA's gatekeeping standards. <u>Id.</u> See also

5

1 court's concerns are real – that a categorical prohibition of Brady claims could sacrifice "all
2 federal review of meritorious claims that petitioner could not have presented to a federal
3 court any sooner," Lopez, 577 F.3d at 1065 – but Lopez does not provide the authority to
4 resolve this tension by creating a Brady exception. The Lopez question, the Northern
5 District's prior dismissal of Fellman's second petition, and AEDPA itself therefore compel
6 Fellman to the Court of Appeals for the Ninth Circuit, where the decision whether to allow
7 her petition, and under what standard to consider it, properly resides.

On this basis alone, the Court GRANTS Respondent's Motion to Dismiss, without
9 prejudice to Fellman filing a successive petition in this Court if she obtains the necessary
10 order from the Court of Appeals for the Ninth Circuit.

### C. In the alternative, Fellman's petition does not raise a material Brady claim

12 In the alternative, granting *arguendo* Fellman's interpretation of Lopez, Fellman's
13 petition fails to raise a material Brady claim.

14 To satisfy Brady's materiality prong, Fellman must demonstrate "a reasonable
15 probability that, had the [newly discovered] evidence been disclosed to the defense, the result
16 of the proceeding would have been different. A 'reasonable probability' is a probability

---

Lopez v. Runnels, No. 03-0543, 2010 WL 3185660, at *1 (E.D. Cal. Aug. 09, 2010) (adopting Maj. J. recommendation that "in light of [Lopez] . . . the decision whether to allow petitioner to proceed with his petition in this court alleging a new Brady claim must be made, in the first instance by the Ninth Circuit Court of Appeals," Lopez v. Runnels, No. 03-0543, 2010 WL 2348742, at *3-4 (E.D. Cal. June 08, 2010)).

Compare also two out-of-circuit decisions that Lopez cited but about which it "express[ed] no opinion." 577 F.3d at 1068 (citing Tompkins v. Sec., Dep't of Corrections, 557 F.3d 1257, 1259-60 (11th Cir. 2009) (holding all second-in-time Brady claims subject to AEDPA's gatekeeping provisions); Evans v. Smith, 220 F.3d 306, 323 (4th Cir. 2000) (same)).

Lastly, Howard v. Evans considered a second-in-time Brady claim that "present[ed] the Court with the question left open in Lopez." No. 09-04750, 2010 WL 2944269, at *4 (N.D. Cal. July 23, 2010). The court did not immediately dismiss the petition as second or successive, drawing instead on Lopez's holding that "second-in-time Brady claims are not 'categorically exempt' from AEDPA's gatekeeping provisions." Id. The court, however, as in Lopez, found the petitioner's claim nonmaterial, obviating the need to answer the Lopez question. Id. at *4-5. The Court here chooses to address materiality only secondarily, finding in the first instance that Lopez does not provide sufficient basis to allow an exception for Brady claims.

United States District Court
For the Northern District of California

sufficient to undermine confidence in the outcome [of the proceeding]." United States v. Bagley, 473 U.S. 667, 682 (1985).[10]

Fellman argues that White's admissions undermine White's testimony and "the testimony of at least two other witnesses," the remaining two of the three jailhouse informants. Opp'n (dkt. 15) at 3. Fellman further alleges that Gardner specifically stated to the jury that he had not offered deals to the informants and that "[i]f we don't tell what the deal is of course it's totally error in the case. Got to reveal it. No deals, no talk about deals, no questions." Id. at 4 (emphasis omitted).

Although the gravity of Fellman's allegations warrants them serious consideration, a thorough review of the record reveals that considerable evidence existed to convict Fellman apart from the impeached statements.[11] This Court's rejection of Fellman's allegations of prosecutorial misconduct in her first habeas petition, and the Ninth Circuit's affirmation on appeal, justify quotation in their entirety:

> Furthermore, as the [California] appellate court found, the credible evidence against Petitioner was substantial enough on its own for a reasonable jury to find beyond a reasonable doubt that Petitioner was guilty. Petitioner was the only person in contact with the victim before he disappeared. His bones were found scattered around a secluded cabin he and Petitioner owned. A construction worker saw a skull and rib cage near the cabin, and then saw Petitioner digging near the cabin and leaving with a bag. When he went back later the bones were gone. The gun was found hidden in the barbershop. Four shell casings from the same gun were found in the cabin. Witnesses testified that Petitioner told many different and conflicting versions of what occurred the weekend of Elroy's disappearance [Fellman's husband]. Elroy's watch and ring were left at home, and there was testimony that he always wore them. It was also found that Elroy was killed in thermal underwear and a flannel shirt, his weekend

---

[10] In order to satisfy Brady, Fellman must prove that "the evidence was: (1) favorable to the accused, (2) suppressed by the government . . . [as well as] (3) material to the guilt or innocence of the defendant." Lopez, 577 F.3d at 1058. As the question before the Court involves the materiality prong, the Court does not address the remaining two elements.

[11] Respondent also points to the "voluminous allegations of prosecutorial misconduct" that the California Court of Appeal considered and rejected following the initial trial. Mot., Ex. A (dkt. 14) at 5. This Court summarized those allegations in its dismissal of Fellman's first habeas petition as follows: the prosecutor "(a) impeached defense witnesses through his unsworn testimony; (b) stated his personal opinion of witnesses' credibility; (c) improperly questioned Petitioner at trial about the credibility of other witnesses; (d) used inflammatory language and rhetoric during cross examination of Petitioner to taunt and degrade her; (e) suggested that Petitioner and her attorney were guilty of perjury; (f) suggested that Petitioner was guilty simply because she employed counsel; and (g) intimidated defense witnesses." Fellman v. Poole, 1993 WL 248693, at *1. Although this previously raised misconduct differs from the prosecutorial misconduct alleged here, the former's rejection still speaks to the strength of the evidence against Fellman independent of Gardner's conduct and the informants' statements.

7

> clothes and not his work clothes, while Petitioner said she last saw him on his way to work.
>
> From this evidence alone, without any prosecutorial misconduct, the jury could have found that Petitioner was guilty beyond a reasonable doubt. Therefore, the Court finds that the one incident of prosecutorial misconduct did not make the trial fundamentally unfair resulting in a violation of Petitioner's due process rights.

Fellman v. Poole, 1993 WL 248693, at *4. On appeal, the Ninth Circuit affirmed:

> Although some of the prosecutor's conduct during petitioner's trial was improper, it did not so infect the trial with unfairness as to rise to a due process violation. When the weight of the evidence against a defendant heavily supports a finding of guilt, the likelihood that the jury's decision was influenced is reduced. . . . Our review of the record demonstrates that there was overwhelming evidence of guilt produced at trial. Additionally, petitioner's counsel objected to much of the improper conduct, and the court sustained the objections. In light of the objections sustained and the overwhelming evidence of guilt adduced at trial, we conclude that the improper conduct of the prosecutor did not rise to the level of a due process violation.

Fellman v. Poole, No. 93-16614, 1994 WL 447275, at *1 (9th Cir. Aug. 19, 1994).

This Court agrees that compelling evidence existed to convict Fellman independent of Gardner's conduct and without reference to the jailhouse informants' allegedly perjured testimonies. See Strickler v. Greene, 527 U.S. 263, 292-95 (habeas petitioner could not show materiality under Brady where the record provided strong support for the conclusion that petitioner would have been convicted even if testimony of an important witness was partially impeached or excluded entirely). Cf. Giglio v. United States, 405 U.S. 150, 154-55 (1970) (finding violation because "the government's case depended almost entirely" on the cooperating witness's testimony, making impeachment crucial); Jackson v. Brown, 513 F.3d 1057, 1076 (9th Cir. 2008) (finding cumulative prosecutorial error to amount to a Brady violation where prosecution lacked separate, corroborating evidence); Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir. 1997) (finding violation where lack of corroborating evidence at trial made impeachment evidence material). Indeed, the informants' testimonies here do not appear "critical to the prosecution's case." Silva v. Brown, 416 F.3d 980, 987 (9th Cir. 2005) (finding violation where favorable evidence impeached witness "without whose testimony the state would have had no evidence," and citing cases that find such evidence material when pertaining to "crucial," "star," or "key" witnesses); see also Maxwell v. Roe,

8

628 F.3d 486, 508 (9th Cir. 2010) (finding violation when pertaining to "'make-or-break' witness for the State").

Although "the materiality inquiry is not just a matter of determining whether . . . the remaining evidence is sufficient to support the jury's conclusions," Strickler, 527 U.S. at 289 (citing Kyles, 514 U.S. at 434-35), White's admissions, and the misconduct they allege, do not undermine confidence in the outcome of Fellman's trial, in light of the considerable, unimpeached evidence against Fellman. It is not reasonably probable therefore that the result of the trial would have been different absent Gardner's alleged misconduct and the questioned testimonies. See id. at 292-95; Smith v. Almada, Nos. 09-55334, 09-55346, 2011 WL 941606, at *7-8 (9th Cir. Mar. 21, 2011) (finding that failure to disclose evidence "does not sufficiently undermine our confidence in the outcome of [the plaintiff's] trial" where prosecution presented significant, corroborating evidence); Hein v. Sullivan, 601 F.3d 897, 905-19 (9th Cir. 2010) (no violation when taken in context of remaining, unimpeached evidence); Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006) (no violation where "independent, compelling evidence of Petitioner's guilt").

Accordingly, the Court would find the evidence presented in Fellman's petition nonmaterial, even if the Court were to assume an exception for material Brady claims under Lopez.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Respondent's Motion to Dismiss, without prejudice to Fellman filing a successive petition in this Court if she obtains the necessary order from the Court of Appeals for the Ninth Circuit.

**IT IS SO ORDERED.**

Dated: June 22, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2010\1101\order dismissing.wpd     9